FILED
2010 MAY -6 AM 10:27
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SULLY-JONES CONTRACTORS, INC. dba SULLY-JONES ROOFING AND SULLY-JONES ROOFING COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN SAFETY INDEMNITY COMPANY; MAXUM INDEMNITY COMPANY,<br><br>Defendants. | CASE NO. 08-cv-1976 BEN (AJB)<br><br>ORDER<br><br>(1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST MAXUM INDEMNITY; AND<br><br>(2) GRANTING IN PART AND DENYING IN PART MAXUM INDEMNITY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT<br><br>[Docket Nos. 80, 85] |

Currently before this Court is Plaintiff's Motion for Partial Summary Judgment against Maxum Indemnity (Docket No. 80) and Defendant Maxum Indemnity Company's ("Maxum's") Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment (Docket No. 85). The parties having fully briefed these motions, the Court finds the motions suitable for disposition on the papers without oral argument, pursuant to Local Civil Rule 7.1.d. For the reasons set forth herein, Plaintiff's Motion is **DENIED** and Maxum's Motion is **GRANTED IN PART AND DENIED IN PART**.

# BACKGROUND

This action arises from Defendants' alleged failure to fully and immediately defend Plaintiff in a construction defect lawsuit against Plaintiff, titled *Pacific Pines Racquet Club Owners Association v. Pacifica Encinitas*, L.P., et al., San Diego Superior Court Case No. GIC878280 (the "Underlying Action").

### A. Maxum Policy

The Maxum insurance policy at issue in this case is Commercial General Liability Policy No. GLP 6004490-01, covering the period from May 20, 2006 to May 20, 2007 (the "06-07 Policy"). (Second Am. Compl., ¶ 14.)

It is undisputed that the 06-07 Policy includes an endorsement ("Apartment/Condo Endorsement") titled "Planned Unit Development, Residential Development, Apartment, Condominium, Townhouse and Mixed Use Exclusion," stating, in relevant part,

> It is hereby understood and agreed that coverage is not provided for any property damage...that arises out of, is related to, or connected with any insured's completed operations, work product or products that are/is incorporated into a planned unit development, resident ial housing development, apartment project, condominium project, townhouse project or mixed use development.
>
> It is further understood and agreed that no coverage is provided for property damage... that arises out of is related to or connected with any apartment project or building structure that is later converted to condominiums or townhouses by an insured or any other person or entity.
>
> This endorsement does not apply if any insured's operations or work occur after a planned unit development, residential housing development; apartment, condominium, townhouse, or mixed use development was certified for occupancy. However, this endorsement applies if the work performed is to repair or replace an insured's work that was completed prior to the certification of occupancy.

(Response Sep. Statement [Docket No. 114-2], ¶ 23.)

It is undisputed the 06-07 Policy also includes an exclusion ("Pre-Existing Damage Exclusion") titled "Pre-Existing Damage or Injury" that states coverage does not apply to damage that first occurred prior to the 06-07 term or is in the process of occurring at the inception date of the policy. (*Id.* at ¶ 24.)

Based on the above, coverage is available under the 06-07 Policy for, among other things, work performed on apartments or condominiums, if performed during the 06-07 term and if performed after

issuance of a certificate of occupancy, as long as the work was not to repair or replace Plaintiff's work performed before certification of occupancy. The Court reads this language as meaning that original construction work on residential projects is not covered. Maxum argues, however, that, even if Plaintiff's work satisfies these conditions, no coverage is available if Plaintiff's work was on a condominium conversion project, regardless of whether a certificate of occupancy was issued. Maxum also argues that, in any event, coverage is not available in this case because the alleged damage did not first occur during the 06-07 term and, therefore, the Pre-Existing Damage Exclusion applies.

### B. Construction Work by Plaintiff

On January 27, 2003,[1] Plaintiff entered into a contract with Pacifica Companies to re-roof a residential complex located in Encinitas, California. (Response to Sep. Statement [Docket No. 128-8, ¶ 10.) The contract stated the work was for 11 apartment buildings and 22 carport buildings. *Id.* at ¶ 11. Plaintiff claims it finished work on the apartment buildings by May 19, 2003 and finished work on the entire project in July 2003. *Id.* at ¶¶ 15-16. According to Plaintiff, Plaintiff performed work after the residential complex was certified for occupancy and performed repairs during the 06-07 term. *Id.* at ¶¶ 19-20.

It is undisputed that the apartments were converted to condominiums. (Response Sep. Statement [Docket No. 114-2], ¶¶ 8, 28.)

### C. Underlying Action

On or around January 11, 2007, the Underlying Action was filed against Plaintiff, alleging construction defects and related damages in connection with Plaintiff's re-roofing. The operative complaint is the First Amended Complaint filed on or around March 6, 2007.

In May 2007, Maxum denied coverage under the 06-07 Policy on the grounds that coverage was precluded under the Apartment/Condo Endorsement and/or the Pre-Existing Damage Exclusion. (Response Sep. Statement [Docket No. 128-8], ¶ 37.)

### D. Present Action

On October 24, 2008, Plaintiff initiated this action. The operative complaint is the Second

---

[1] The agreement was counter-signed by Pacifica Companies on January 29, 2003. (Response Sep. Statement [Docket No. 115-3], ¶ 62.)

Amended Complaint filed September 18, 2009. (Docket No. 62.)

The Second Amended Complaint asserts the following claims: (1) Breach of Written Contract-Failure to Defend (First Cause of Action); (2) Breach of Written Contract-Failure to Indemnify (Second Cause of Action); (3) Breach of the Implied Covenant of Good Faith and Fair Dealing- Failure to Defend (Third Cause of Action); (4) Breach of the Implied Covenant of Good Faith and Fair Dealing- Failure to Indemnify (Fourth Cause of Action); (5) Reformation (Fifth Cause of Action); and (6) Declaratory Relief (Sixth Cause of Action). (Docket No. 62.) This Court has jurisdiction based on diversity of citizenship.

On November 30, 2009, Plaintiff filed a Motion for Partial Summary Judgment against Maxum. (Docket No. 80.) On the same day, Maxum filed a Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment against Plaintiff. (Docket No. 85.) Both parties filed oppositions and replies.

## DISCUSSION

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**I.    FIRST AND SECOND CAUSES OF ACTION: BREACH OF CONTRACT**

The First and Second Causes of Action allege breach of contract based on the alleged failure to defend and alleged failure to indemnify, respectively. "The duty to defend is broader than the duty to indemnify..." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 654 (2005). However, where, as here, the potential for indemnity depends on whether the policy even applies to the risk for which the insured is sued, the comparative scope of the two duties is inconsequential. Therefore, the Court analyzes these causes of action together.

**A.    Apartment/Condo Endorsement**

In the absence of ambiguity, an insurance contract and the duties thereunder must be determined based on the terms of the contract. *Sarchett v. Blue Shield of Calif.*, 73 Cal.3d 1, 14-15 (1989) ("When a court is reviewing claims under an insurance policy, it must hold the insured bound

by clear and conspicuous provisions in the policy even if evidence suggests that the insured did not read or understand them."). The interpretation of a clear and unambiguous contract is a question of law that a court may determine on summary judgment. *Welles v. Turner Entm't Co.*, 503 F.3d 728, 734 (9th Cir. 2007). Where the contract is ambiguous and the parties' intent is at issue, however, summary judgment is not proper. *Id.*

An ambiguity exists where a term is susceptible to two or more meanings by a reasonably prudent person applying for insurance. *Sterling Builders, Inc. v. United Nat. Ins. Co.*, 79 Cal. App. 4th 105, 111 (2000). Applying those principles here, the Court finds that the 06-07 Policy is not ambiguous. The 06-07 Policy clearly and plainly provides that coverage is available for work performed on, among other things, apartment buildings, condominiums and condominium conversion projects, as long as the work is performed after certification of occupancy, during the applicable time period, and is not to repair or replace work that Plaintiff performed prior to certification of occupancy. An insurance policy must be enforced according to its "plain meaning or the meaning a layperson would ordinarily attach to it." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (1995). The mere assertion by an insured of an interpretation that is different from the insurance company's interpretation does not give rise to an ambiguity; rather, the insured's proffered interpretation must be acceptable by reasonable people. *United Servs. Auto. Ass'n v. Baggett,* 209 Cal. App. 3d 1387, 1397 (1989). Contrary to Maxum's contention, no reasonable person would interpret the Apartment/Condo Endorsement as precluding all coverage for any work performed on a condominium conversion project, regardless of occupancy certification. Accordingly, the Court finds the 06-07 Policy is not ambiguous.

The issue then becomes whether Plaintiff's work was performed after the complex was certified for occupancy. Plaintiff submits three documents, each titled "Application Inquiry" and indicating that some sort of certificates of occupancy were issued in January 2000. The first document states the certificate of occupancy listed therein relates to a "Garage/Carport," the second to a "Dwelling, Apt/Condo (Acc. Bldg)," and the third to an "Office-TI/Remodel/Repair." (Response Sep. Statement [Docket No. 128-8], ¶ 17.) Even if these representations are true, however, Plaintiff's evidence, in particular the second Application Inquiry, does not specify whether

the certificate of occupancy is for an apartment building or, for example, an accent building such as a "cover for mail boxes." *Id.* Neither party submits other facts that are clear and undisputed. Therefore, summary judgment is denied on the grounds that a triable issue of fact exists as to whether Plaintiff's re-roofing was performed after certification of occupancy.[2]

### B. Pre-Existing Damage Exclusion

Maxum argues that, regardless of the Apartment/Condo Endorsement, the Pre-Existing Damage Exclusion precludes coverage because the damages alleged in the Underlying Action did not first occur during the 06-07 term. Maxum relies on a paragraph in the complaint in the Underlying Action indicating that damages arose from work performed in 2002 and 2003. Maxum also cites discovery from the Underlying Action allegedly showing damages possibly occurred in 2003, 2004 and 2005, but not during the 06-07 term, although Maxum also recognizes that discovery revealed a repair order dated during the 06-07 term. (Response to Sep. Statement [Docket No. 114-2], ¶ 11; see also Response to Sep. Statement [Docket No. 128-8], ¶¶ 20- 22.) Plaintiff argues that, although it completed the re-roofing project in 2003, certain damages alleged in the Underlying Action relate to repair work subsequently performed on the complex and relevant to the 06-07 term. (Response to Sep. Statement [Docket No. 114-2], ¶ 11.) There are clearly no undisputed facts or legal authority that enable the Court to determine coverage under the Pre-Existing Damage Exclusion at this stage of the case. The Court also notes the Underlying Action is in its early stages and discovery in this action may not have commenced on this issue. (See Docket No. 30 (indicating discovery has only commenced "with regard to matters of law including the apartment versus condominium issue, and issues associated with the insurance coverage and claims handling disputes in the case").) Under these circumstances, the Court cannot determine whether, as a matter of law, the Pre-Existing Damages Exclusion applies or whether damages fall within the 06-07 term. Accordingly, summary judgment is denied.

---

[2] Maxum also suggests it is irrelevant whether the apartment buildings were certified for occupancy prior to the conversion, as only post-conversion certificates of occupancy are dispositive of coverage issues. Maxum cites no law or facts to support this position. Based on the plain language of the 06-07 Policy, a pre- and post-conversion distinction is not meaningful for purposes of determining coverage under the 06-07 Policy.

### C. Duty to Defend

A duty to defend arises when a lawsuit against an insured seeks damages that on any theory, if proven, would be covered by the policy. *Montrose Chem. Corp. v. Superior Court*, 6 Cal.4th 287, 295 (1993). In this case, Plaintiff alleges it "performed repairs during the 2006-2007 Maxum Policy period." (Response Sep. Statement [Docket No. 128-8], ¶ 20.) However, as noted above, disputed issues exist regarding whether damages arose during the 06-07 term and, thus, whether coverage is available under the 06-07 Policy. Additionally, discovery in the Underlying Action and this action are in its early stages. Under these circumstances, the Court cannot determine as a matter of law whether the potential for liability coverage exists such that Maxum's duty to defend is triggered.

Accordingly, summary judgment on the First and Second Causes of Action is **DENIED**.

## II. THIRD AND FOURTH CAUSES OF ACTION: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### A. Implied Covenants of Good Faith and Fair Dealing

Plaintiff alleges Maxum breached the implied covenant of good faith and fair dealing by, among other things, "refusing to timely, promptly and without delay, pay for the reasonable and necessary defense incurred after the tender" and "misrepresenting the insurance policy provisions." (Second Am. Compl., ¶ 68.)

A cause of action for breach of the implied covenant cannot be maintained unless policy benefits are due. If there is no coverage under the terms of the policy, there is no basis for a claim that the insured's right to receive the benefits of the contract were frustrated by an inadequate investigation, oppressive conduct by a claims adjuster, or other alleged underhanded tactics. *Waller,* 11 Cal.4th at 35-36. Absent a contractual right to coverage, "the implied covenant has nothing upon which to act as a supplement and 'should not be endowed with an existence independent of its contractual underpinnings.'" *Id.* at 36.

In light of the Court's decision that triable issues of fact exist as to whether coverage applies under the 06-07 Policy, the Court cannot determine whether, as a matter of law, Maxum acted in bad faith in denying coverage under the 06-07 Policy. Likewise, the Court cannot determine whether, as a matter of law, Maxum is protected by the genuine dispute doctrine. *Harbison v. Am. Motorists Ins.*

*Co.*, 636 F. Supp. 2d 1030, 1040-41 (E.D. Cal. 2009) (holding that because a triable issue of fact existed on coverage, the genuine dispute doctrine could not be determined on summary judgment).

Therefore, summary judgment on the Third and Fourth Causes of Action is **DENIED**.

### B.     Punitive Damages

Plaintiff seeks punitive damages under the Third and Fourth Causes of Action. Punitive damages must be proven by clear and convincing evidence of willful, malicious, fraudulent or oppressive conduct. Cal. Civ. Code § 3294(a). Because triable issues of fact exist as to whether coverage applies under the 06-07 Policy and, thus, whether Maxum acted with bad faith in denying coverage thereunder, triable issues of fact also exist as to whether Maxum acted with malice, oppression or fraud. Neither party cites facts that are undisputed to enable the Court to determine this issue as a matter of law. Therefore, summary judgment is **DENIED**.

### III.    FIFTH CAUSE OF ACTION: REFORMATION

An insurance policy may be reformed "where, by reason of fraud, inequitable conduct or mutual mistake, the policy as written does not express the actual and real agreement of the parties." *Am. Sur. Co. of N. Y. v. Heise*, 136 Cal. App. 2d 689, 695-96 (1955); see also Cal. Civ. Code § 3399. The party seeking reformation must show: (1) an antecedent agreement existed between the insured and insurer as to which there was no mistake; (2) the insurance policy as drafted contains terms materially different from the parties' antecedent agreement; and (3) that the difference was the result of fraud, mutual mistake or inequitable conduct by the opposing party. *Id.* "In revising a written instrument, the court may inquire what the instrument was intended to mean, and what were intended to be its legal consequences, and is not confined to the inquiry what the language of the instrument was intended to be." Cal. Civ. Code § 3401.

As detailed above, the Court finds that the 06-07 Policy clearly and unambiguously states the parties' intentions. Specifically, the 06-07 Policy clearly and unambiguously states that coverage is available for work performed on, among other things, apartment buildings, condominiums and condominium conversion projects, as long as the work is performed after certification of occupancy, during the applicable time period, and is not to repair or replace work that Plaintiff performed prior to certification of occupancy. The record is void of any evidence that this clear and express intent is

the result of fraud, mistake or inequitable conduct. As such, the Court finds that, as a matter of law, Plaintiff cannot satisfy the elements for reformation and, thus, cannot state a claim for relief under the Fifth Cause of Action.[3]

Accordingly, summary judgment on the Fifth Cause of Action is **GRANTED** in favor of Maxum.

## EVIDENTIARY OBJECTIONS

Both parties filed evidentiary objections. To the extent not inconsistent with the findings contained herein, the Court overrules the evidentiary objections.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's and Maxum's motions for summary judgment on Plaintiff's First, Second, Third and Fourth Causes of Action and demand for punitive damages. The Court **GRANTS** summary judgment in favor of Maxum on Plaintiff's Fifth Cause of Action.

**IT IS SO ORDERED.**

Date: May 6, 2010

Hon. Roger T. Benitez
United States District Court Judge

---

[3] As a practical matter, based on the Court's other findings, it is likely that Plaintiff's Fifth Cause of Action has, in any event, been rendered superfluous because Plaintiff's requested relief is the same as that already provided for by the Court under the First and Second Causes of Action.