FILED

2010 MAY -6 AM 10: 19

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SULLY-JONES CONTRACTORS, INC. dba SULLY-JONES ROOFING AND SULLY-JONES ROOFING COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN SAFETY INDEMNITY COMPANY; MAXUM INDEMNITY COMPANY,<br><br>Defendants. | CASE NO. 08-cv-1976 BEN (AJB)<br><br>ORDER<br><br>(1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST AMERICAN SAFETY INDEMNITY COMPANY; AND<br><br>(2) GRANTING IN PART AND DENYING IN PART AMERICAN SAFETY INDEMNITY COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT<br><br>[Docket Nos. 81, 104] |

Currently before this Court is Plaintiff's Motion for Partial Summary Judgment against American Safety Indemnity Company (Docket No. 81) and Defendant American Safety Indemnity Company's ("ASIC's") Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment (Docket No. 104). The parties having fully briefed these motions, the Court finds these motions suitable for disposition on the papers without oral argument pursuant to Local Civil Rule 7.1.d. For the reasons set forth herein, Plaintiff's Motion is **DENIED** and ASIC's Motion is **GRANTED IN PART AND DENIED IN PART.**

# BACKGROUND

This action arises from Defendants' alleged failure to fully and immediately defend Plaintiff in a construction defect lawsuit against Plaintiff, titled *Pacific Pines Racquet Club Owners Association v. Pacifica Encinitas*, L.P., et al., San Diego Superior Court Case No. GIC878280 (the "Underlying Action").

### A.  ASIC Policies

The ASIC insurance policies at issue in this case include: (1) Commercial General Liability Policy No. XGI 02-3132-001, covering the period from May 20, 2002 to May 20, 2003 (the "02-03 Policy"); (2) Commercial General Liability Policy No. XGI 03-3132-002, covering the period from May 20, 2003 to May 20, 2004 (the "03-04 Policy"); and (3) Commercial General Liability Policy No. ESL001285-04-03, covering the period from May 20, 2004 to May 20, 2005 (the "04-05 Policy"). (Second Am. Compl., ¶ 9.)

It is undisputed that the 02-03 and 03-04 Policies include an endorsement ("Endorsement") titled "Condominium, Townhouse, Multi-Family Dwelling Projects Exclusion," which states, in relevant part,

> This insurance does not apply to... any work or operations performed by you or any contractors or subcontractors working directly or indirectly on your behalf in connection with any condominium, townhouse or multifamily dwelling project.

(Response to Sep. Statement [Docket No. 130], ¶¶ 16, 23.) The parties do not dispute that, pursuant to this endorsement, work performed on condominiums is excluded from coverage. (Response to Sep. Statement [Docket No. 115-3], ¶ 20; Response to Sep. Statement [Docket No. 130], ¶ 23.) However, Plaintiff alleges that the endorsement, as attached to the 02-03 Policy, includes a carveout for work performed on apartment buildings, which was memorialized by correspondence and other communications between the parties when they negotiated and agreed to the terms of the 02-03 Policy. (Second Am. Compl., ¶¶ 10-12; P. & A. [Docket No. 81], pgs. 7-8.) Plaintiff alleges the 03-04 Policy was a renewal of the 02-03 Policy and, therefore, includes the carveout as well. *Id.* Based on this carveout, Plaintiff contends that any work performed on apartment buildings during the 02-03 or 03-04 term is covered under ASIC's insurance. *Id.* ASIC disputes these allegations, arguing the 02-03 Policy

fully and clearly sets forth the agreement between the parties; Plaintiff reviewed the 02-03 Policy before signing it and, therefore, had the opportunity to contest the absence of the carveout, but failed to do so; and each policy is independent such that the 03-04 Policy does not merely renew and incorporate any prior provisions set forth in the 02-03 Policy.

The parties do not dispute that the 04-05 Policy does not include the above endorsement; therefore, work performed on condominium or apartment buildings during the 04-05 term is not excluded from insurance coverage. (Response Sep. Statement [Docket No. 130], ¶ 30.)

### B. Construction Work by Plaintiff

It is undisputed that, on January 27, 2003,[1] Plaintiff entered into a contract with Pacifica Companies to re-roof a residential complex located in Encinitas, California. (Response to Sep. Statement [Docket No. 130], ¶ 33.) The contract stated the work was for 11 apartment buildings and 22 carport buildings. *Id.* at ¶ 34. Plaintiff claims it finished work on the apartment buildings by May 19, 2003 and finished work on the entire project by July 11, 2003. *Id.* at ¶¶ 46, 47, 82, 83 (see also Response to Sep. Statement [Docket No. 115-3], ¶ 63.) According to Plaintiff, damages were incurred and attempted repairs were performed in 2003, 2004 and 2005. *Id.* at 77.

It is undisputed that the apartments were converted to condominiums. According to ASIC, the conversion took place while Plaintiff was performing work for the complex and Plaintiff, at the very least, had constructive knowledge of the conversion. (P. & A. [Docket No. 104], pgs. 7-9.) Plaintiff alleges it had no knowledge of the conversion until after the re-roofing was finished. (P. & A. [Docket No. 81-1], pgs. 9-10.)

### C. Underlying Action

On or around January 11, 2007, the Underlying Action was filed against Plaintiff, alleging construction defects and related damages in connection with Plaintiff's re-roofing. Plaintiff's liability insurer, Defendant Maxum Indemnity Company, tendered a defense to ASIC.

On March 27, 2007, ASIC denied coverage under the 02-03 and 03-04 Polices based, in part, on the Endorsement. (Response Sep. Statement [Docket No. 115-3], ¶ 68.) ASIC also denied coverage

---

[1] The agreement was counter-signed by Pacifica Companies on January 29, 2003. (Response Sep. Statement [Docket No. 115-3], ¶ 62.)

under the 04-05 Policy on the grounds that the alleged defective work was not performed during the 04-05 term. *Id.* at 69.

Plaintiff later advised ASIC that it had performed roofing warranty return work during the 04-05 term; accordingly, on March 10, 2009, ASIC agreed to provide Plaintiff with a defense under the 04-05 Policy, subject to a reservation of ASIC's rights and subject to satisfaction of the conditions in the 04-05 Policy. *Id.* at ¶¶ 74, 76.

### D. Present Action

On October 24, 2008, Plaintiff initiated this action. The operative complaint is the Second Amended Complaint filed September 18, 2009. (Docket No. 62.)

The Second Amended Complaint asserts the following claims: (1) Breach of Written Contract-Failure to Defend (First Cause of Action); (2) Breach of Written Contract-Failure to Indemnify (Second Cause of Action); (3) Breach of the Implied Covenant of Good Faith and Fair Dealing- Failure to Defend (Third Cause of Action); (4) Breach of the Implied Covenant of Good Faith and Fair Dealing-Failure to Indemnify (Fourth Cause of Action); (5) Reformation (Fifth Cause of Action); and (6) Declaratory Relief (Sixth Cause of Action). (Docket No. 62.) This Court has jurisdiction based on diversity of citizenship.

On November 30, 2009, Plaintiff filed a Motion for Partial Summary Judgment against ASIC. (Docket No. 81.) On the same day, ASIC filed a Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment against Plaintiff. (Docket No. 104.) Both parties filed oppositions and replies.

## DISCUSSION

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### I. FIRST AND SECOND CAUSES OF ACTION: BREACH OF CONTRACT

The First and Second Causes of Action allege breach of contract based on the alleged failure to defend and alleged failure to indemnify, respectively. "The duty to defend is broader than the duty

to indemnify..." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 654 (2005). However, where, as here, the potential for indemnity depends on whether the policy even applies to the risk for which the insured is sued, the comparative scope of the two duties is inconsequential. Therefore, the Court analyzes these causes of action together.

The First and Second Causes of Action are based on all three ASIC policies; however, only the first two ASIC policies, i.e., the 02-03 and 03-04 Policies, are the subject of the parties' summary judgment motions.[2] Therefore, the Court only analyzes the 02-03 and 03-04 Policies herein.

### A. ASIC's 02-03 Policy

In the absence of ambiguity, an insurance contract and the duties thereunder must be determined based on the terms of the contract. *Sarchett v. Blue Shield of Calif.*, 73 Cal.3d 1, 14-15 (1989) ("When a court is reviewing claims under an insurance policy, it must hold the insured bound by clear and conspicuous provisions in the policy even if evidence suggests that the insured did not read or understand them."). The interpretation of a clear and unambiguous contract is a question of law that a court may determine on summary judgment. *Welles v. Turner Entm't Co.*, 503 F.3d 728, 734 (9th Cir. 2007). Where the contract is ambiguous and the parties' intent is at issue, however, summary judgment is not proper. *Id.*

An ambiguity exists where a term is susceptible to two or more meanings by a reasonably prudent person applying for insurance. *Sterling Builders, Inc. v. United Nat. Ins. Co.*, 79 Cal. App. 4th 105, 111 (2000). The mere assertion by an insured of an interpretation that is different from the insurance company's interpretation does not give rise to an ambiguity; rather, the insured's proffered interpretation must be acceptable by reasonable people. *United Servs. Auto. Ass'n v. Baggett*, 209 Cal. App. 3d 1387, 1397 (1989).

Plaintiff argues that because the term "multi-family dwelling" is not defined in the Endorsement, the Endorsement is ambiguous as to whether it applies apartment buildings. The

---

[2] ASIC's motion suggests summary judgment should also be granted to the extent Plaintiff's claims relate to the 04-05 Policy because ASIC has agreed to provide a defense in the Underlying Action under that policy. However, ASIC has cited no undisputed facts or legal authority showing that, based on such circumstances, there is no longer a triable issue of fact. Therefore, summary judgment is denied.

Court finds that no reasonable person would interpret the term "multi-family dwelling" in the Endorsement as not including apartment buildings, regardless of whether the term is defined. An insurance policy must be enforced according to its "plain meaning or the meaning a layperson would ordinarily attach to it." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (1995). Here, the term "multi-family dwelling" plainly includes apartment buildings. Nonetheless, the Court does find that a reasonable person may be confused regarding the extent to which the Endorsement was incorporated into the 02-03 Policy. The 02-03 Policy includes a two-page Declarations page setting forth, among other things, a list of specific endorsements that are incorporated by reference into the 02-03 Policy. (Response Sep. Statement [Docket No. 130], ¶ 1.) The list does not include the Endorsement, even though the Endorsement is physically attached to the policy and listed by name in the binder. *Id.* (see also Response Sep. Statement [Docket No. 115-3], ¶ 8.) The list also includes an endorsement, ES 98 23 09 99, that is not physically attached the policy. *Id.* The Court finds that these inconsistencies render the 02-03 Policy ambiguous as to the extent to which the Endorsement and any purported carveout relating to the Endorsement are included in the 02-03 Policy.

Where, as here, an ambiguity exists, resort may be made to usage, surrounding circumstances existing at the time the contract was made, or other extrinsic evidence to explain the meaning the policy. *Gribaldo, Jacobs, Jones & Assocs. v. Agrippina Versicherunges A. G.*, 3 Cal.3d 434, 444 (1970) ("the preliminary consideration of all credible evidence offered to prove the intention of the parties requires that the trial court consider evidence which includes testimony as to the circumstances surrounding the making of the agreement including the object, nature and subject matter of the writing so that the court can place itself in the same situation in which the parties found themselves at the time of contracting.")

In this case, Plaintiff submits extrinsic evidence showing Plaintiff negotiated the carveout prior to signing the 02-03 Policy. (Response Sep. Statement [Docket No. 130], ¶¶ 9-13.) This extrinsic evidence is undisputed and is dated around the time the policy was signed, i.e., in 2002. *Id.* Plaintiff also submits evidence (dated 2008) suggesting ASIC subsequently agreed that the carveout applies to the 02-03 Policy. (Response Sep. Statement [Docket No. 130], ¶¶ 108, 114.) However, as ASIC correctly notes, this evidence arose from subsequent events and, therefore, is not

relevant, as it does not allow a trier of fact to "place itself in the same situation in which the parties found themselves at the time of contracting." *Gribaldo*, 3 Cal.3d at 444. Despite the undisputed nature of the 2002 evidence, the Court finds that a genuine issue of material fact exists regarding the carveout and the Endorsement because, among other things, the 2002 evidence only states the intentions and negotiations from one party.

Issues involving the parties' intent and deciding which of several documents expresses the terms of the parties' agreement are a task for the jury, for which summary judgment is not proper. *Welles*, 503 F.3d at 737; *Minnesota Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 982-983 (9th Cir. 1999) (whether insurance policy provided term or whole life insurance was question of fact because policy was reissued several times and terms varied). Therefore, to the extent the First and Second Causes of Action are based on the 02-03 Policy, summary judgment is **DENIED**.

### B.   ASIC's 03-04 Policy

Plaintiff argues the 03-04 Policy is a mere renewal of the 02-03 Policy and, therefore, incorporates any "carveout" applicable to the 02-03 Policy. ASIC argues the 03-04 Policy is a separate policy, emphasizing the separate quote, separate binder and separate contract that gave rise to the second policy.

As noted, in the absence of ambiguity, an insurance contract and the duties thereunder must be determined based on the terms of the contract; parties are bound to the terms of their contract as set forth therein. *Sarchett*, 43 Cal.3d at 14-15. Contrary to Plaintiff's assertion, no reasonable person would interpret the term "multi-family dwelling" in the Endorsement as not including apartment buildings. Unlike the 02-03 Policy, there is no ambiguity regarding the extent to which the Endorsement is incorporated into the 03-04 Policy. The quote, binder and agreement (including Declarations Page) specific to the 03-04 Policy clearly and plainly state that the Endorsement is included therein. (Response Sep. Statement [Docket No. 130], ¶ 2; Response Sep. Statement [Docket No. 115-3], ¶¶ 22-24, 26-28, 30, 32-33.)

Although Plaintiff argues the 03-04 Policy is merely a renewal of the 02-03 Policy, Plaintiff cites no law or facts to support this position. Absent a statute or policy provision, an insurer has no legal duty to renew an insurance policy when its term expires. *Travelers Ins. Co. v. Lesher*, 187

Cal.App.3d 169, 194 (1986). Where, as here, separate policy documents (i.e., applications, quotes, binders, agreements) have been issued and refer to terms, conditions and losses under that second policy, strong evidence exists that the original and alleged renewal policies are intended to be separate and distinct contracts. *A.B.S. Clothing Collection, Inc. v. Home Ins. Co.*, 34 Cal.App.4th 1470, 1483-84 (1995). In this case, neither the application, quote, binder nor agreement relating to the 03-04 Policy suggests that this policy is a renewal of the 02-03 Policy or that whatever conditions or obligations exist under the 02-03 Policy also exist in the 03-04 Policy. The 03-04 Policy includes endorsements not included in the 02-03 Policy and, unlike the 02-03 Policy, makes specific reference to the Endorsement at issue in this case. (Response Sep. Statement [Docket No. 130], ¶¶ 1, 2.) Therefore, the 03-04 Policy is not a mere renewal of the 02-03 Policy and whatever "carveout" may exist in the 02-03 Policy, if any, does not exist in the 03-04 Policy.

The interpretation of a clear and unambiguous contract is a question of law that the Court may decide on summary judgment. In light of the above, the Court finds that there is no material dispute that the 03-04 Policy includes the Endorsement, without a "carveout" for work performed on apartment buildings. Therefore, pursuant to the 03-04 Policy, work performed on any "condominium, townhouse, or multi-family dwelling," including apartment buildings, is not covered by the ASIC 03-04 Policy. Accordingly, to the extent the First and Second Causes of Action are based on the 03-04 Policy, summary judgment is **GRANTED** in favor of ASIC.

### C. Nature of Re-Roofing Work

The issue now becomes whether Plaintiff's re-roofing work was performed on apartment or condominium buildings. This issue is relevant with respect to the 02-03 Policy in the event the trier of fact determines that an apartment "carveout" applies to the Endorsement. This issue is moot with respect to the 03-04 Policy because that policy clearly includes the Endorsement without any carveout for work performed on apartment buildings, as detailed above.

Both parties submit evidence allegedly showing what Plaintiff did or did not know at the time the work was performed under the 02-03 term. ASIC's evidence suggests Plaintiff may, at least, have had constructive knowledge of the condominium conversion in light of: (1) certain documents on file with, and/or issued by, applicable government agencies, and (2) marketing efforts

around the complex. Plaintiff claims ignorance, relying on its contract which stated the work was to be performed on "apartment buildings" and arguing that, even if certain plans were on file with the appropriate government entities, conversion does not take place until the actual conveyance of an individual condominium unit, which did not occur until July 2003. Neither party presents undisputed facts that enable the Court to determine this issue as a matter of law. Under these circumstances, the Court finds there is a material dispute regarding whether Plaintiff's re-roofing work during the 02-03 term was performed on apartment or condominium buildings. As such, the summary judgment is denied. Fed. R. Civ. P. 56(c).

### D.  Duty to Defend

It is undisputed ASIC is providing Plaintiff with a defense under the third ASIC policy, subject to a reservation of ASIC's rights and subject to satisfaction of the conditions under that policy. (Response Sep. Statement [Docket No. 115-3], ¶¶ 76, 77.) Plaintiff seeks a determination from this Court that, as a matter of law, ASIC owes a duty to defend under all three ASIC policies.

A duty to defend arises when a lawsuit against an insured seeks damages that on any theory, if proven, would be covered by the policy. *Montrose Chem. Corp. v. Superior Court*, 6 Cal.4th 287, 295 (1993). In this case, Plaintiff alleges "damages and attempted repairs were performed in 2003, 2004 and 2005 on a number of the 11 buildings." (Response Sep. Statement [Docket No. 132], ¶ 77.) These facts are too vague and ambiguous as to time for this Court to determine under which ASIC policy damages arose (i.e., whether the alleged 2003 damages arose under the 02-03 Policy or 03-04 policy), and neither party cites any other facts that are undisputed. Additionally, an order issued by Magistrate Judge Battaglia in this case suggests that, in light of the early stages of the Underlying Action, discovery has not commenced on this issue. (Docket No. 30.) Rather, discovery has only commenced "with regard to matters of law including the apartment versus condominium issue, and issues associated with the insurance coverage and claims handling disputes in the case." *Id.* Accordingly, the Court denies summary judgment.

In sum, the Court **DENIES** summary judgment under the First and Second Causes of Action with regard to the extent of coverage afforded under the 02-03 Policy, the nature of work performed during the 02-03 term, and whether and when the duty to defend was triggered under that policy. The

Court **GRANTS** summary judgment in favor of ASIC under the First and Second Causes of Action with regard to the 03-04 Policy, on the grounds there is no material dispute that the 03-04 Policy incorporates the Endorsement, the Endorsement thereunder does not include an apartment "carveout," and, therefore, Plaintiff's work at the residential complex during the 03-04 term is not covered by the 03-04 Policy. Because no coverage applies under the 03-04 Policy, the issue of whether and when the duty to defend was triggered under that policy is moot.

## II. THIRD AND FOURTH CAUSES OF ACTION: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### A. Implied Covenants of Good Faith and Fair Dealing

Plaintiff alleges ASIC breached the implied covenant of good faith and fair dealing by, among other things, "misrepresenting the insurance policy provisions" and refusing to provide a defense in the Underlying Action. (Second Am. Compl., ¶ 68.)

A cause of action for breach of the implied covenant cannot be maintained unless policy benefits are due. If there is no coverage under the terms of the policy, there is no basis for a claim that the insured's right to receive the benefits of the contract were frustrated by an inadequate investigation, oppressive conduct by a claims adjuster, or other alleged underhanded tactics. *Waller,* 11 Cal.4th at 35-36. Absent a contractual right to coverage, "the implied covenant has nothing upon which to act as a supplement and 'should not be endowed with an existence independent of its contractual underpinnings.'" *Id.* at 36.

In light of the Court's decision that no coverage applies under the 03-04 Policy, the Court finds that, as a matter of law, a bad faith claim cannot be maintained against ASIC under that policy. However, because triable issues of fact exist as to whether coverage applies under the 02-03 Policy, as detailed above, the Court cannot determine whether, as a matter of law, ASIC acted in bad faith in denying coverage under the 02-03 Policy. Likewise, the Court cannot determine whether, as a matter of law, ASIC is protected by the genuine dispute doctrine. *Harbison v. Am. Motorists Ins. Co.*, 636 F.Supp.2d 1030, 1040-41 (E.D. Cal. 2009) (holding that because a triable issue of fact existed on coverage, the genuine dispute doctrine could not be determined on summary judgment).

Therefore, to the extent the Third and Fourth Causes of Action rely on the 02-03 Policy,

1  summary judgment in **DENIED**. To the extent the Third and Fourth Causes of Action rely on the 03-
2  04 Policy, summary judgment is **GRANTED** in favor of ASIC.

3              **B.    Punitive Damages**

4        Plaintiff seeks punitive damages under the Third and Fourth Causes of Action. Punitive
5  damages must be proven by clear and convincing evidence of willful, malicious, fraudulent or
6  oppressive conduct. Cal. Civ. Code § 3294(a). Because triable issues of fact exist as to whether
7  coverage applies under the 02-03 Policy and, thus, whether ASIC acted with bad faith in denying
8  coverage thereunder, triable issues of fact also exist as to whether ASIC acted with malice, oppression
9  or fraud. Neither party cites facts that are undisputed to enable the Court to determine this issue as a
10 matter of law. Therefore, to the extent Plaintiff's punitive damages claim is base on the 02-03 Policy,
11 summary judgment is **DENIED**. However, to the extent Plaintiff's punitive damages claim is based
12 on the 03-04 Policy, summary judgment is **GRANTED** in favor of ASIC, as this Court finds that no
13 bad faith claim exists against ASIC based on the 03-04 Policy.

14     **III.   FIFTH CAUSE OF ACTION: REFORMATION**

15       Plaintiff seeks to reform the first two ASIC policies based upon a purported mistake of fact as
16 to the policies' terms.

17              **A.    Statute of Limitations**

18       California Code of Civil Procedure section 338 provides a three year statute of limitations for
19 reformation claims. Cal. Civ. Proc. Code §§ 338(d). ASIC argues the statute of limitations began to
20 run no later than May 2002, when Plaintiff admits receiving and reviewing the binder for the 02-03
21 Policy. Plaintiff argues the statute of limitations did not begin until ASIC denied coverage in the
22 Underlying Action, which occurred no earlier than May 2007.

23       Where, as here, the action seeks to reform an insurance policy, the statute begins to run when
24 the mistake is discovered, or when the plaintiff, by reasonable diligence could and should have
25 discovered it. *Butcher v. Truck Ins. Exchange*, 77 Cal. App. 4th 1442, 1470 (2000); *see also* Cal.
26 Civ. Proc. Code §§ 338(d). However, a reasonable insured does not have a continuing duty to
27 investigate the coverage of its policies when there is no reason to do so. *Id.* Therefore, ASIC's
28 contention that Plaintiff was concerned about the apartment carveout at the time of the binders and

1 quotes for the policies and, thus, allegedly knew of the mistake at that time, is not persuasive. Rather,
2 the earliest that Plaintiff may have had reason to investigate coverage under the policies is when it
3 repaired the alleged defects at the residential complex. As no undisputed facts exist to establish when
4 those damages and repairs occurred or even if Plaintiff may have been reasonably aware of the
5 potential for coverage issues based thereon, the Court finds it cannot determine as a matter of law that
6 Plaintiff's reformation claim is time-barred.

        **B.    Mistake**

An insurance policy may be reformed "where, by reason of fraud, inequitable conduct or mutual mistake, the policy as written does not express the actual and real agreement of the parties." *Am. Sur. Co. of N. Y. v. Heise*, 136 Cal. App. 2d 689, 695-96 (1955); see also Cal. Civ. Code § 3399. The party seeking reformation must show: (1) an antecedent agreement existed between the insured and insurer as to which there was no mistake; (2) the insurance policy as drafted contains terms materially different from the parties' antecedent agreement; and (3) that the difference was the result of fraud, mutual mistake or inequitable conduct by the opposing party. *Id.* "In revising a written instrument, the court may inquire what the instrument was intended to mean, and what were intended to be its legal consequences, and is not confined to the inquiry what the language of the instrument was intended to be." Cal. Civ. Code § 3401.

Based on the ambiguity in the 02-03 Policy, as detailed above, the Court finds there is a triable issue of fact regarding the parties' intentions under the 02-03 Policy such that summary judgment is not proper. On the other hand, as explained above, the Court finds the 03-04 Policy clearly and unambiguously states the parties' intentions thereunder; therefore, the Court finds that, as a matter of law, Plaintiff cannot state a claim for reformation based on the 03-04 Policy.

Accordingly, to the extent the Fifth Cause of Action seeks reformation of the 02-03 Policy, summary judgment is **DENIED**. However, to the extent the Fifth Cause of Action seeks reformation of the 03-04 Policy, summary judgment is **GRANTED** in favor of ASIC.

**IV.    SIXTH CAUSE OF ACTION: DECLARATORY RELIEF**

A cause of action for declaratory relief must be premised upon an actual, present controversy between the parties. *City of Cotati v. Cashman*, 29 Cal.4th 69, 79-80 (2002). As Plaintiff cannot

demonstrate a breach of the 03-04 Policy, as detailed above, there is no "controversy" thereunder and, hence, no right to declaratory relief. On the other hand, material disputes exist regarding the 02-03 Policy such that an actual, present controversy does exist thereunder. As such, to the extent the Sixth Cause of Action is based on the 02-03 Policy, summary judgment is **DENIED**; to the extent the Sixth Cause of Action is based on the 03-04 Policy, summary judgment is **GRANTED** in favor of ASIC.

## EVIDENTIARY OBJECTIONS

Both parties filed evidentiary objections. To the extent not inconsistent with the findings contained herein, the Court overrules the evidentiary objections.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's and ASIC's motions for summary judgment on Plaintiff's First, Second, Third, Fourth, Fifth and Sixth Causes of Action and demand for punitive damages, as those claims relate to the 02-03 policy. The Court **GRANTS** summary judgment in favor of ASIC on Plaintiff's First, Second, Third, Fourth, Fifth and Sixth Causes of Action and demand for punitive damages, as those claims relate to the 03-04 policy.

**IT IS SO ORDERED.**

Date: April __, 2010
May 6

Hon. Roger T. Benitez
United States District Court Judge