FILED
DEC 12 2011
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SULLY-JONES CONTRACTORS, INC. dba SULLY-JONES ROOFING AND SULLY-JONES ROOFING COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN SAFETY INDEMNITY COMPANY; MAXUM INDEMNITY COMPANY,<br><br>Defendants. | CASE NO. 08-cv-1976 BEN (AJB)<br><br>**ORDER DENYING MAXUM INDEMNITY COMPANY'S SECOND MOTION FOR SUMMARY JUDGMENT**<br><br>[Docket No. 196] |

Presently before this Court is Defendant Maxum Indemnity Company's Second Motion for Summary Judgment. (Docket No. 196.) For the reasons set forth below, the Motion is **DENIED**.

## BACKGROUND

This action arises from Defendants' alleged failure to fully and immediately defend Plaintiff Sully-Jones Contractors, Inc. in a construction defect lawsuit against Plaintiff, titled *Pacific Pines Racquet Club Owners Association v. Pacifica Encinitas, L.P.*, San Diego Superior Court Case No. GIC878280 ("Underlying Action").

### A. Maxum Policy

The Maxum insurance policy at issue in this case is Commercial General Liability Policy No. GLP 6004490-01, covering the period from May 20, 2006 to May 20, 2007 (the "06-07 Policy").

(Second Am. Compl. ¶ 14.)

The 06-07 Policy includes an endorsement ("Apartment/Condominium Endorsement") titled "Planned Unit Development, Residential Development, Apartment, Condominium, Townhouse and Mixed Use Exclusion," stating, in relevant part,

> It is hereby understood and agreed that coverage is not provided for any property damage . . . that arises out of, is related to, or connected with any insured's completed operations, work product or products that are/is incorporated into a planned unit development, residential housing development, apartment project, condominium project, townhouse project or mixed use development.
>
> It is further understood and agreed that no coverage is provided for property damage . . . that arises out of is related to or connected with any apartment project or building structure that is later converted to condominiums or townhouses by an insured or any other person or entity.
>
> This endorsement does not apply if any insured's operations or work occur after a planned unit development, residential housing development; apartment, condominium, townhouse, or mixed use development was certified for occupancy. However, this endorsement applies if the work performed is to repair or replace an insured's work that was completed prior to the certification of occupancy.

(Sep. Statement [Docket No. 196-2], ¶ 30.)

The 06-07 Policy also includes an exclusion ("Pre-Existing Damage Exclusion") titled "Pre-Existing Damage or Injury" that states coverage does not apply to damage that first occurred prior to the 06-07 term or is in the process of occurring at the inception date of the policy. (Sep. Statement [Docket No. 198-2], ¶ 6.)

As explained in the Court's May 6, 2010 Order, coverage is available under the 06-07 Policy for, among other things, work performed on apartments or condominiums, if performed during the 06-07 term and if performed after issuance of a certificate of occupancy, as long as the work was not to repair or replace Plaintiff's work performed before certification of occupancy. The Court reads this language as meaning that original construction work on residential projects is not covered.

### B. Construction Work by Plaintiff

On January 27, 2003,[1] Plaintiff entered into a contract with Pacifica Companies to re-roof a residential complex located in Encinitas, California. (Response to Sep. Statement [Docket No. 128-8],

---

[1] The agreement was counter-signed by Pacifica Companies on January 29, 2003. (Response to Sep. Statement [Docket No. 115-3], ¶ 62.)

¶ 10.) The contract entered into by Plaintiff and Pacifica Companies stated that the work was to re-roof the upper flat roof decks of 11 apartment buildings and re-roof the flat roof decks of 22 carport buildings. (Sep. Statement [Docket No. 198-2], ¶ 10.) Plaintiff claims it finished work on the apartment buildings by May 19, 2003, and finished work on the carports by July, 2003. (*Id.* at ¶¶ 14-15.) According to Plaintiff, Plaintiff performed work after the residential complex was certified for occupancy and performed repairs during the 06-07 term.

The apartments were later converted to condominiums. (Response to Sep. Statement [Docket No. 114-2], ¶¶ 8, 28.) In order to be able to sell the individual units as condominiums, Pacifica Encinitas was required to obtain a valid, unexpired Final Subdivision Public Report from the California Department of Real Estate ("DRE"). (Sep. Statement [Docket No. 196-2], ¶ 11.) The Final Subdivision Public Reports for Pacific Pines Condominium project were issued by the DRE on June 26 and July 24, 2003. (*Id.* ¶ 13.)

### C.     Underlying Action

On January 11, 2007, the Underlying Action was filed against Plaintiff, alleging construction defects and related damages in connection with Plaintiff's re-roofing. In May 2007, Maxum denied coverage under the 06-07 Policy on the grounds that coverage was precluded under the Apartment/Condominium Endorsement and/or the Pre-Existing Damage Exclusion. (Response to Sep. Statement [Docket No. 128-8], ¶ 37.)

### D.     Present Action

On October 24, 2008, Plaintiff initiated the present action. The operative complaint is the Second Amended Complaint, filed September 18, 2009.[2] (Docket No. 62.) The Second Amended Complaint asserts the following claims: (1) Breach of Written Contract—Failure to Defend; (2) Breach of Written Contract—Failure to Indemnify; (3) Breach of the Implied Covenant of Good Faith and Fair Dealing—Failure to Defend; (4) Breach of the Implied Covenant of Good Faith and Fair Dealing—Failure to Indemnify; (5) Reformation; and (6) Declaratory Relief. (Docket No. 62.)

---

[2] The Second Amended Complaint asserts claims against both Maxum and American Safety Indemnity Company. The parties filed a Joint Motion to Dismiss American Safety Indemnity Company on March 22, 2011 (Docket No. 180), which the Court granted on March 24, 2011 (Docket No. 181). Accordingly, Maxum is the only remaining defendant.

1   On November 30, 2009, Plaintiff filed a Motion for Partial Summary Judgment against Maxum. (Docket No. 80.) On the same day, Maxum filed a Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment against Plaintiff. (Docket No. 85.) On May 6, 2010, the Court denied Plaintiff's Motion, and granted in part and denied in part Maxum's Motion. Specifically, the court denied Plaintiff's and Maxum's motions for summary judgment on Plaintiff's first, second, third, and fourth causes of action and demand for punitive damages. The Court granted summary judgment in favor of Maxum on Plaintiff's fifth cause of action.

On October 28, 2011, Maxum filed a Second Motion for Summary Judgment. (Docket No. 196.) Being fully briefed, the Court finds the Motion suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1.

## DISCUSSION

Summary judgment must be granted where the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the defendant is the moving party, the defendant must show that a cause of action has no merit by putting forth evidence that either one or more elements of the cause of action cannot be established or that a complete defense exists thereto. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A party may make a renewed motion for summary judgment where the motion presents newly discovered facts supporting the issues reasserted in the motion. *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010).

### I.   FIRST AND SECOND CAUSES OF ACTION: BREACH OF CONTRACT

The First and Second Causes of Action allege breach of contract based on the alleged failure to defend and alleged failure to indemnify, respectively. "The duty to defend is broader than the duty to indemnify." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (2005). However, where, as here, the potential for indemnity depends on whether the policy even applies to the risk for which the insured is sued, the comparative scope of the two duties is inconsequential. Therefore, the Court analyzes these causes of action together.

### A. Duty to Indemnify

An insurance policy must be enforced according to its "plain meaning or the meaning a layperson would ordinarily attach to it." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). In the absence of ambiguity, an insurance contract and the duties thereunder must be determined based on the terms of the contract. *Sarchett v. Blue Shield of Cal.*, 73 Cal. 3d 1, 14-15 (1989). The interpretation of a clear and unambiguous contract is a question of law that a court may determine on summary judgment. *Welles v. Turner Entm't Co.*, 503 F.3d 728, 734 (9th Cir. 2007). Where the contract is ambiguous and the parties' intent is at issue, however, summary judgment is not proper. *Id.* An ambiguity exists where a term is susceptible to two or more meanings by a reasonably prudent person applying for insurance. *Sterling Builders, Inc. v. United Nat'l Ins. Co.*, 79 Cal. App. 4th 105, 111 (4th Dist. 2000). The mere assertion by an insured of an interpretation that is different from the insurance company's interpretation does not give rise to an ambiguity; rather, the insured's proffered interpretation must be acceptable by reasonable people. *United Servs. Auto. Ass'n v. Baggett*, 209 Cal. App. 3d 1387, 1397 (6th Dist. 1989).

In the May 6, 2010 Order, the Court found that the 06-07 Policy is not ambiguous. The Order stated, "[t]he 06-07 Policy clearly and plainly provides that coverage is available for work performed on, among other things, apartment buildings, condominiums and condominium conversion projects, as long as the work is performed after certification of occupancy, during the applicable time period, and is not to repair or replace work that Plaintiff performed prior to certification of occupancy." (May 6, 2010 Order at 5.) In response to Maxum's argument that it is irrelevant whether the apartment buildings at issue here were certified for occupancy prior to the conversion because only post-conversion certificates of occupancy are dispositive of coverage issues, the Court found that "a pre- and post-conversion distinction is not meaningful for purposes of determining coverage under the 06-07 Policy." (*Id.* at 6 n.2.)[3]

---

[3] In the Second Motion for Summary Judgment, Maxum again argues that under the 06-07 Policy, "coverage is excluded for damages arising out of Sully-Jones' work on apartments or other buildings that are converted to condominiums, unless Sully-Jones' work occurs after the *condominiums* were certified for occupancy." (Mot. at 8 (emphasis added).) Specifically, Maxum argues that because Plaintiff's roofing work on the property was performed on apartments that were converted to condominiums before the condominiums were certified for occupancy when Final

In support of its previous Motion for Summary Judgment, Plaintiff submitted documents purporting to show that certificates of occupancy were issued in January 2000. Specifically, Plaintiff submitted three documents, each titled "Application Inquiry" and indicating that some sort of certificates of occupancy were issued in January 2000. The first document states that certificate of occupancy listed therein relates to a "Garage/Carport," the second to a "Dwelling, Apt/Condo (Acc. Bldg)," and the third to an "Office-TI/Remodel/Repair." (Response to Sep. Statement [Docket No. 128-8], ¶ 17.) Because these documents did not specify whether the certificates of occupancy were for an apartment building or for an accent building, the Court denied summary judgment on the grounds that a triable issue of fact existed as to whether Plaintiff's re-roofing was performed after certification of occupancy.

In regards to Maxum's Second Motion for Summary Judgment, the dispositive issue remains whether Plaintiff's re-roofing work was performed after certification of occupancy. Neither party submits an actual certificate of occupancy. The parties argue that the 06-07 Policy does not require that certificates of occupancy be issued, but rather that the insured's work be performed after the project is *certified* for occupancy. (Mot. at 11-12; Opp. at 3 n.1.) Neither party has presented clear and undisputed evidence showing that the apartment complex was certified for occupancy, as explained below.

Subsequent to the May 6, 2010 Order, Maxum obtained copies of the City of Encinitas' records relating to the property. Maxum argues that these records reveal that in 1999 and 2000, a prior owner of the property applied for and was issued building permits for renovations at the property, including the partial demolition of two carports and the addition of end walls, construction of a new cover for mailboxes, and the remodeling of the existing rental office and laundry area. (Mot., Exh. 23.) It

---

Subdivision Public Reports were issued in June and July, 2003, the Apartment/Condominium Exclusion applies and Maxum had no duty to defend or indemnify Plaintiff in the underlying action. In support of this argument, Maxum cites *California Traditions, Inc. v. Claremont Liability Insurance Co.*, 197 Cal. App. 4th 410 (2011).
    As explained above, this argument was rejected in the May 6, 2010 Order. (May 6, 2010 Order at 6 n.2.) In addition, *California Traditions* is inapposite because unlike the project at issue in the present action, the project at issue there was a new construction development, wherein the insured performed rough framing work for 146 new residential units before the units were occupied by tenants or owners. *Cal. Traditions*, 197 Cal. App. 4th at 413-14.

appears that the building permits were indeed for partial demolition of two carports and the addition of end walls, construction of a new cover for mailboxes, and the remodeling of the existing rental office and laundry area. On the other hand, Plaintiff submits the deposition of James Simmons, who testifies that "given the certificate of occupancy recorded or filed for the 1720 S. El Camino Real, Encinitas, CA prior to January 11, 2000, for the car port and garage repair, there was a previously existing valid certificate of occupancy as of that date for the Apartment complex as a whole prior to that date. These facts clearly establish that the occupancy had to have taken place and a certificate of occupancy would have had to be issued for that to happen." (Simmons Decl. [Docket No. 198-4], ¶ 23.) This creates a triable issue of fact as to whether the apartment complex was certified for occupancy.

In addition, Plaintiff presents new evidence purporting to show that a certificate of occupancy was issued prior to when Plaintiff performed work on the property.[4] First, Plaintiff argues that the apartment buildings Plaintiff performed work on were originally certified for occupancy in 1984. Plaintiff produces the Regulatory Agreement and Declaration of Restrictive Covenants, which the County of San Diego, First Interstate Bank, and Encinitas Partners entered into on February 28, 1984. (Opp., Exh. 28.) This Agreement provides,

> Upon completion of the Project, the Developer will submit to the County and the Trustee, a Certificate of Completion, substantially in the form set forth in Exhibit F to the Agreement, containing the following certifications: (i) the statement of the Developer and its architect or engineer that the Project was substantially completed and ready and available for occupancy as of a specified date; (ii) the Developer's statement, confirmed by the Trustee, of the aggregate amount disbursed on the Developer Loan to the Developer prior to and upon the Completion Date; and (iii) the Developer's certification that all of the amounts disbursed on the Developer Loan have been applied to pay or reimburse the Developer for the payment of Project Costs and that none of the amounts disbursed on the Developer Loan have been applied to pay or reimburse any party for the payment of costs or expenses other than Project Costs; and (iv) the Developer's certification that the Developer Loan has been applied to pay or reimburse the Developer for the payment of Qualified Project Costs in an amount equal to 92% or more is of the total amount disbursed on the Developer Loan less any amount of the Developer Loan applied to pay or to reimburse the Developer for the payment of the costs of issuing the Bonds as set forth in Section 305 of the Indenture.

---

[4] Although Plaintiff did not file a cross-motion for summary judgment, Plaintiff requests in its opposition that the Court grant summary judgment in its favor. The Court declines to grant summary judgment in the Plaintiff's favor. As explained above, there exists a triable issue of fact as to whether Plaintiff's re-roofing was performed after certification of occupancy.

1  (*Id.* at 8.) Purporting to show that such a Certificate of Completion was recorded by Encinitas
2  Partners, Plaintiff produces a Notice of Completion, dated April 6, 1984. (*Id.*, Exh. 29.) In this Notice
3  of Completion, the owner's representative, Rodney Stone, swore that a "work of improvement" on lots
4  1, 2, 3, 8, and 9 for the project located at 1720 El Camino Real, Encinitas, California, was completed
5  on March 27, 1984. (*Id.*) Mr. Stone, however, does not state that the project is ready and available
6  for occupancy. In addition, the Notice of Completion does not satisfy the last three requirements for
7  a Certificate of Completion outlined in the Agreement. Accordingly, the Notice of Completion does
8  not clearly and undisputedly prove that a Certificate of Completion was recorded for the property.

9  Second, Plaintiff argues that it is reasonable to assume that the apartment buildings must have
10  been certified for occupancy because tenants lived there from at least 1993 to 2003. Plaintiff, however,
11  has failed to produce documentation clearly showing that the apartment buildings were certified for
12  occupancy.

13  Overall, neither party submits clear and undisputed facts showing that it is entitled to summary
14  judgment on the first cause of action. Summary judgment is again denied on the grounds that a triable
15  issue of fact exists as to whether Plaintiff's re-roofing was performed after certification of occupancy.
16  As the issues discussed above are dispositive, the parties' other arguments will not be addressed.

**B.      Duty to Defend**

A duty to defend arises when a lawsuit against an insured seeks damages that on any theory, if proven, would be covered by the policy. *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993). This duty continues until there is "undisputed proof" of the absence of any potential coverage. *Id.*

In this case, Plaintiff alleges it "performed repairs during the 2006-2007 Maxum Policy period." (Response to Sep. Statement [Docket No. 128-8], ¶ 20.) In the May 6, 2010 Order, however, the Court found that disputed issues of fact exist regarding whether damages arose during the 06-07 term and, thus, whether coverage is available under the 06-07 Policy. In the Second Motion for Summary Judgment, Maxum does not address whether damages arose during the 06-07 term, or

present new evidence that it did not arise during the 06-07 term.[5] Under these circumstances, the Court cannot determine as a matter of law whether the potential for liability coverage exists such that Maxum's duty to defend is triggered. Accordingly, summary judgment on the second cause of action is **DENIED**.

## II.    THIRD AND FOURTH CAUSES OF ACTION: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiff alleges Maxum breached the implied covenant of good faith and fair dealing by, among other things, "refusing to timely, promptly and without delay, pay for the reasonable and necessary defense incurred after the tender" and "misrepresenting the insurance policy provisions." (Second Am. Compl. ¶ 68.)

A cause of action for breach of the implied covenant cannot be maintained unless policy benefits are due. If there is no coverage under the terms of the policy, there is no basis for a claim that the insured's right to receive the benefits of the contract were frustrated by an inadequate investigation, oppressive conduct by a claims adjuster, or other alleged underhanded tactics. *Waller,* 11 Cal. 4th at 35-36. Absent a contractual right to coverage, "the implied covenant has nothing upon which to act as a supplement and should not be endowed with an existence independent of its contractual underpinnings." *Id.* at 36 (internal quotation marks omitted).

In light of the Court's decision that triable issues of fact exist as to whether coverage applies under the 06-07 Policy, the Court cannot determine whether, as a matter of law, Maxum acted in bad faith in denying coverage under the 06-07 Policy. Likewise, the Court cannot determine whether, as a matter of law, Maxum is protected by the genuine dispute doctrine. *Harbison v. Am. Motorists Ins. Co.,* 636 F. Supp. 2d 1030, 1040-41 (E.D. Cal. 2009) (holding that because a triable issue of fact existed on coverage, the genuine dispute doctrine could not be determined on summary judgment). Therefore, summary judgment on the third and fourth causes of action is **DENIED**.

---

[5] In its opposition, Plaintiff argues that Maxum cannot establish by undeniable evidence that the damage to the property occurred prior to the effective dates of the 06-07 Policy. The 06-07 Policy's Pre-Existing Damage or Injury Exclusion, however, is not addressed in Maxum's Second Motion for Summary Judgment. Accordingly, Plaintiff's arguments in regards to this issue will not be addressed.

### III. EVIDENTIARY ISSUES

#### A. Requests for Judicial Notice

Maxum requests that the Court take judicial notice of (1) the First Amended Complaint in *Pacific Pines Racquet Club Owners Association v. Pacifica Encinitas, LP*, San Diego County Superior Court, Case No. GIC878280; (2) the Regulatory Agreement and Declaration of Restrictive Covenants, recorded on February 28, 1984 by the San Diego County Recorder's Office; (3) the Final Subdivision Public Report, issued on July 18, 1986 for Torrey Pines Racquet Club, Phase 4, by California Department of Real Estate; (4) the Grant Deed from the Northwestern Mutual Life Insurance Company to Pacifica Encinitas, LP, recorded by the San Diego County Recorder's Office on December 26, 2002 as Document No. 2002-1184782; (5) the Restated & Superseding Declaration of CC&Rs for Pacific Pines Racquet Club, recorded by the San Diego County Recorder's Office on June 9, 2003 as Document No. 2003-0679264; (6) the Final Subdivision Public Report amended/renewed on June 26, 2003 for Pacific Pines Racquet Club, Phase 1, by California Department of Real Estate; (7) the Final Subdivision Public Report amended/renewed on July 24, 2003 for Pacific Pines Racquet Club, Phase 2, by California Department of Real Estate; (8) the Final Subdivision Public Report amended/renewed on July 24, 2003 for Pacific Pines Racquet Club, Phase 4, by California Department of Real Estate; (9) the Final Subdivision Public Report amended/renewed on July 24, 2003 for Pacific Pines Racquet Club, Phase 3, by California Department of Real Estate; (10) the Grant Deed recorded by the San Diego County Recorder's Office on July 15, 2003 as Document No. 2003-0843276; (11) the Complaint filed in *Sully-Jones Contractors, Inc. v. American Safety Indemnity Co.*, Southern District of California, Case No. 08-CV-1976 BEN (AJB); and (12) the Second Amended Complaint filed in *Sully-Jones Contractors, Inc. v. American Safety Indemnity Co.*, Southern District of California, Case No. 08-CV-1976 BEN (AJB). (Def. RJN [Docket No. 196-3].) As for Documents (1), (11), and (12), the Court **GRANTS** these requests for judicial notice, but only for purposes of noticing the existence of the lawsuits and the claims made therein. *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010). As for the remaining documents, the Court **GRANTS** these requests for judicial notice pursuant to Federal Rule of Evidence 201(b).

Plaintiff requests that the Court take judicial notice of (1) the Regulatory Agreement and Declaration of Restrictive Covenants recorded by the San Diego County Recorder's Office on February

28, 1984; and (2) the Notice of Completion for the subject property recorded by the San Diego County Recorder's Office on April 6, 1984. (Pl. RJN [Docket No. 198-3].) The Court **GRANTS** these requests for judicial notice pursuant to Federal Rule of Evidence 201(b).

        **B.**    **Evidentiary Objections**

Both parties filed evidentiary objections. To the extent not inconsistent with the findings contained herein, the Court overrules the evidentiary objections.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Maxum's Second Motion for Summary Judgment.

**IT IS SO ORDERED.**

DATED: December ___, 2011

HON. ROGER T. BENITEZ
United States District Court Judge